## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RYAN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:25-cv-00078-B |
| INTERNAL REVENUE SERVICE; | ) | |
| DEPARTMENT OF THE TREASURY, | ) | |
| DANIEL WERFEL, | ) | |
| Commissioner of Internal Revenue Service, | ) | |
| in his official capacity | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

*/s/ Michael W. May*
HERBERT W. LINDER
Ohio Bar No. 0065446
MICHAEL W. MAY
TX bar No. 24054882
Trial Attorney, Tax Division
Department of Justice
1700 Pacific Ave., Suite 3700
Dallas, Texas 75201
(214) 880-9754 (Linder)
(214) 880-9730 (May)
(214) 880-9741 (facsimile)
Herbert.W.Linder@usdoj.gov
Michael.W.May@usdoj.gov

*Counsel for Defendant*
*United States of America*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF ISSUES ................................................................................... 3

III.   BACKGROUND ................................................................................................... 3

       Section 831 and Micro-captive Insurance............................................................ 3

       Authority to require reporting of certain listed transactions................................. 5

       Treasury Guidance regarding micro-captive insurance transactions ..................... 5

       Micro-Captive Final Rule--Treasury Decision TD 10029.................................... 7

       Present Case .......................................................................................................... 8

IV.    LEGAL STANDARD ........................................................................................... 9

V.     ARGUMENT ...................................................................................................... 10

   A.  The Court lacks jurisdiction because Ryan lacks standing for its claims. ......... 10

       1.  Ryan lacks standing because it fails to establish an injury in fact. .............. 11

       2.  Ryan's alleged harm is too speculative to establish causation. ................... 12

   B.  The Court lacks jurisdiction because this suit is "with respect to federal taxes" and is thus
       barred by the Declaratory Judgment Act .......................................................... 14

   C.  Ryan's complaint should be dismissed because it falls outside the zone of interest to be
       protected under the APA and Section 831(b). ................................................... 15

   D.  All of Ryan's APA claims should be dismissed for failure to state a claim. ..... 18

       1.  Treasury acted within its statutory authority when issuing the Final Rule.............. 18

       2.  The Final Rule is not contrary to law, specifically Section 831(b). ......................... 19

       3.  The Final Rule, TD 10029, is not arbitrary and capricious. ..................................... 20

VI.    CONCLUSION.................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Wright*,
    468 U.S. (1984)................................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................9

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*,
    397 U.S. 150 (1970).....................................................................................................2, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................9, 18

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
    419 U.S. 281 (1974)........................................................................................................21

*CIC Svcs., LLC v. IRS*,
    592 F. Supp. 3d 677 (E.D. Tenn. 2021)......................................................................5, 21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...................................................................................................11, 13

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987)........................................................................................................16

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021)........................................................................................................20

*Food and Drug Admin. v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2004)...................................................................................................10, 11

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) .........................................................................................10

*Hunsucker v. Phinney*,
    497 F.2d 29 (5th Cir. 1974) ...........................................................................................14

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)........................................................................................................15

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..................................................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................ *passim*

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (U.S.1990)......................................................................................16, 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..............................................................................................20, 21

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) .................................................................................11

*Orix Credit All. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ...........................................................................11, 14

*Port Drum Co. v. Umphrey*,
    852 F.2d 148 (5th Cir. 1988) .................................................................................14

*R.V.I. Guar. Co., Ltd. & Subs. v. Commissioner*,
    145 T.C. 209 (2015)...............................................................................................22

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ...................................................................................9

*Rivero v. Fidelity. Investments, Inc.*,
    1 F.4th 340 (5th Cir. 2021) ..............................................................................14, 15

*Smith v. Am. Pain & Wellness, PLLC*,
    747 F. Supp. 3d 989 (E.D. Tex. 2024)......................................................................9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................11

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ...................................................................................10

*In re Vitro S.A.B.de CV*,
    701 F.3d 1031 (5th Cir. 2012) .................................................................................15

*Voluntary Purchasing Groups, Inc. v. Reilly*,
    889 F.2d 1380 (5th Cir. 1989) .................................................................................14

iv

*Warren v. United States*,
　874 F.2d 280 (5th Cir. 1989) .................................................................................2, 14

*Whitmore v. Arkansas*,
　495 U.S. 149 (1990).........................................................................................11

**Federal Statutes**

5 U.S.C. § 702.....................................................................................................2, 16

5 U.S.C. § 706........................................................................................................2

5 U.S.C. § 706(2)(A)...............................................................................................20

26 U.S.C. § 11.........................................................................................................3

26 U.S.C. § 162.......................................................................................................4

26 U.S.C. § 816.......................................................................................................4

26 U.S.C. § 831(a) ................................................................................................3, 4

26 U.S.C. § 831(b) ............................................................................................*passim*

26 U.S.C. § 6011.................................................................................................5, 19

26 U.S.C. § 6111.................................................................................................5, 19

26 U.S.C. § 6707(a) ................................................................................................5

26 U.S.C. § 6707A(a) ..............................................................................................5

26 U.S.C. § 6707A(c)(1).....................................................................................5, 19

28 U.S.C. § 1331.................................................................................................2, 14

28 U.S.C. § 1346.................................................................................................2, 14

28 U.S.C. § 2201............................................................................................2, 10, 14

Public Law 114–113, 129 Stat. 2242 .........................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................9, 10

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 9, 18, 24

**Regulations**

26 C.F.R. § 1.6011-4 .................................................................................5, 19

26 C.F.R. § 301.6111-1 .................................................................................19

26 C.F.R. § 301.6111-3 ...................................................................................5

88 Fed. Reg. 21547 ..........................................................................................6

90 Fed. Reg. 3534 ..................................................................... *passim*

Notice 2016-66, 2016-47 I.R.B. 745 ..............................................................5

**Constitutional Provisions**

U.S. CONST., Article III, § 2 .........................................................................10

**Other Authorities**

H.R. Rep. No. 99-426 (1985) ...........................................................................3

H.R. Rep. No. 100-795 (1988) .........................................................................4

S. Rep. No. 100-445 (1988) .............................................................................4

## I.    INTRODUCTION

Congress has given the Secretary of the Treasury the authority to require disclosure of tax-related information helpful in assessing and collecting taxes. This includes identifying transactions with the risk of tax avoidance. In January of 2025, the Department of the Treasury (Treasury) issued final regulations ("Final Rule" or TD 10029) that identified certain micro-captive insurance transactions that must be disclosed to the IRS. The disclosure of an arrangement as a reportable transaction does not prohibit taxpayers from engaging in a covered arrangement or determine the tax consequences thereof. It simply means that a taxpayer who participates in that arrangement— or acts as a material advisor to taxpayers who participate in that arrangement—must affirmatively report that participation.

Plaintiff Ryan, LLC, ("Ryan"), brought this suit to challenge the Final Rule's disclosure requirements. However, Ryan does not allege that it is participating in covered micro-captive insurance arrangements or intends to do so. Ryan does not allege that it is acting as a material advisor to taxpayers participating in such arrangements. Instead, Ryan alleges that the disclosure requirements will harm it by discouraging current and potential clients from establishing and maintaining captive insurance companies and prevent Ryan from thus expanding its business.

Ryan lacks standing to bring this suit because it has failed to allege an existing, real or imminent or non-speculative injury. The doctrine of "standing" limits potential lawsuits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  If a party fails to establish standing their case must be dismissed for lack of jurisdiction. To establish standing, Ryan must show (1) an "injury in fact," . . . (2) a sufficient "causal connection between the injury and the conduct complained of,"

and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Id.* at 560. Ryan fails this test because its alleged harm is not real, concrete, or imminent but speculative, and it does not establish causation.

None of 28 U.S.C. §§ 1331, 1346, and 2201 provides an independent basis for jurisdiction, and they do not waive the United States' sovereign immunity. And, specifically, the declaratory relief Ryan seeks is barred under the tax exception to the Declaratory Judgment Act. While the Declaratory Judgment Act authorizes federal courts to provide declaratory relief, it deprives a court of jurisdiction that might otherwise exist in cases "with respect to Federal taxes." *Warren v. United States*, 874 F.2d 280, 282 (5th Cir. 1989).

Ryan's case should also be dismissed because it falls outside the zone of interest to protected by the statute at issue as necessary to state a claim under 5 U.S.C. § 702. *See Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). Ryan's amended complaint is centered on 26 U.S.C. § 831(b), a code section providing an "[a]lternative tax for certain small [insurance] companies" upon election. However, Ryan is not a small insurance company—it is a consulting company. Further, the Final Rule does not change or create any new requirements for Section 831(b).[1]

Ryan's amended complaint fails to state a claim for relief under the Administrative Procedure Act ("APA") and should be dismissed under Rule 12(b)(6) for that reason. It relies on faulty legal theories and asserts insufficient facts to support relief. Treasury has not violated the APA in issuing the Final Rule. The APA directs courts to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Treasury acted within its statutory authority when

---

[1] Unless otherwise specified, all "Section" or "§" references are to sections of the Internal Revenue Code.

2

issuing the Final Rule. The Final Rule is not contrary to law, specifically Section 831(b). The Final

Rule does not change Section 831(b) for a legitimate micro-captive arrangement. The Final Rule

simply provides a disclosure requirement and does not disallow any specific transaction. Nor is

the Final Rule arbitrary and capricious. Treasury considered comments received and explained its

decisions in response to the comments.

## II.    STATEMENT OF ISSUES

A.    Whether the Court lacks jurisdiction because Ryan lacks standing to bring this suit for failing to show an injury in fact or allege harm that is not too speculative to establish causation?

B.    Whether the Court lacks jurisdiction because this suit is barred by the Declaratory Judgment Act?

C.    Whether Ryan's suit should be dismissed for failing to state a claim because it falls outside the zone of interest to be protected by the statute on which Ryan relies?

D.    Whether Ryan's APA claims should be dismissed for failure to state a claim:

    1)    Whether Treasury acted within its statutory authority to enact TD 10029?

    2)    Whether TD 10029 is contrary to law, specifically Section 831(b)?

    3)    Whether TD 10029 is arbitrary and capricious?

## III.    BACKGROUND

### Section 831 and Micro-captive Insurance

26 U.S.C. § 831(a) generally imposes tax on the taxable income (including underwriting

and investment income) of every insurance company other than a life insurance company for each

taxable year. *See* 26 U.S.C. §§ 11, 831(a). However, certain small nonlife insurance companies

may elect to be subject to the alternative tax imposed by Section 831(b). Section 831(b)[2] is titled

---

[2] Congress enacted Section 831(b) in the interest of simplifying the Code. H.R. Rep. No. 99-426, at 678 (1985) ("The present law applicable to small and certain ordinary mutual companies is inordinately complex and should be

"Alternative tax for certain small companies" and provides that upon election, an eligible nonlife insurance company can be taxed under Section 831(b) in lieu of the tax otherwise imposed by Section 831(a). Section 831(b) imposes tax only on the company's taxable investment income; thus, it pays no tax on its underwriting income (including amounts paid as premiums). Under Section 831(b), a qualifying company can exclude up to $2.2 million of such income, as adjusted for inflation for the taxable year.[3]

A captive insurance company is a closely held company established for the purpose of insuring the risks of affiliated companies. A micro-captive insurance company is a small captive insurance company that elects the alternative tax under Section 831(b). A micro-captive transaction is generally an insurance arrangement between a parent company and a "captive" insurer under its control designed to take advantage of this provision of the Internal Revenue Code. The insured party may deduct its premium payments as business expenses. *See* 26 U.S.C. § 162(a). And the captive insurer may exclude up to $2.2 million of those premiums from its own taxable income, under the tax break for small insurance companies described above. *See* 26 U.S.C. § 831(b). The result is that this money does not get taxed at all. But no tax benefit should be had if the money is not really for insurance—that is, if the insurance contract is a sham into which the affiliated

---

simplified."). Congress amended Section 831(b) in 1988 to provide that the election may be revoked only with the consent of the Secretary, with the clear intent "that the election not be used as a means of eliminating tax liability (e.g., by making the election only for years when the taxpayer does not have net operating losses), but rather as a simplification for small companies." H.R. Rep. No. 100-795, at 121 (1988); S. Rep. No. 100-445, at 127 (1988). Congress enacted section 333 of the Protecting Americans from Tax Hikes Act of 2015 (PATH Act), div. Q. of Public Law 114–113, 129 Stat. 2242, 3040 (December 18, 2015), to both tighten and expand the requirements for qualifying under Section 831(b). As amended by the PATH Act, Section 831(b) requires an eligible electing company to be an insurance company (within the meaning of section 816(a) of the Code) having net written premiums (or, if greater, direct written premiums) for the taxable year not exceeding $2.2 million as adjusted for inflation and to meet the diversification requirements of Section 831(b)(2)(B).

[3] The Section 831(b) threshold for amounts paid as premiums is $2.85 million for 2025.

companies have entered only to escape tax liability. The IRS has determined that the purpose of some micro-captive transactions is of the kind to avoid taxation of income.

### Authority to require reporting of certain listed transactions

Treasury has broad authority, from Congress, to require disclosure of tax-related information that it believes will be helpful in assessing and collecting taxes. Congress has authorized and tasked Treasury with identifying transactions with the potential risk of tax avoidance. *See* 26 U.S.C. §§ 6011, 6111, 6707A(c)(1). Treasury Regulations under Sections 6011 and 6111 require a participant in a reportable transaction, and a material advisor with respect to a reportable transaction, to file certain disclosure forms with the IRS. Treas. Reg. §§ 1.6011-4, 301.6111-3. The term "reportable transaction" includes several categories of transactions, including "listed transactions." Treas. Reg. § 1.6011-4(b)(1) and (2). A listed transaction is "a transaction that is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance." Treas. Reg. § 1.6011-4(b)(2). A "transaction of interest" is a transaction that the IRS has identified as such by notice, regulation, or other form of published guidance. Treas. Reg. § 1.6011-4(b)(6). Failure to disclose reportable transactions can result in penalties under Sections 6707(a) and 6707A(a) of the IRC.

### Treasury Guidance regarding micro-captive insurance transactions

On November 21, 2016, the IRS published Notice 2016-66, 2016-47 I.R.B. 745. Notice 2016-66 alerted taxpayers and their representatives, pursuant to Treas. Reg. § 1.6011-4(b)(6) and for purposes of sections 6111 and 6112, that the IRS identified as transactions of interest certain micro-captive transactions. A court later set aside that guidance for failure to comply with the APA. *CIC Svcs., LLC v. IRS*, 592 F. Supp. 3d 677, 687 (E.D. Tenn. 2021) (acknowledging "the IRS may

ultimately be correct that micro-captive insurance arrangements have the potential for tax avoidance or evasion and should be classified as transactions of interest")

On April 11, 2023, Treasury issued proposed regulations (REG–109309–22) in a Notice of Proposed Rule Making ("NPRM") published in the Federal Register (88 FR 21547). Treasury received many comments in the form of comment letters in response to the NPRM. In fact, on June 12, 2023, Ryan submitted a comment letter in response to the NPRM.[4] Ryan's comment letter asserted many of the same issues asserted in its complaint here. Ryan asserted that the Proposed Regulations did not define what constitutes a valid micro-captive arrangement and would inevitably capture valid captive programs.[5] Ryan argued this would cause a substantial decrease in the use of micro-captive insurance companies contrary to the intent of Congress.[6]

Treasury proposed using the Financing Factor and the Loss Ratio Factor as two criteria to determine if a micro-captive arrangement is a listed transaction or a transaction of interest. The Financing Factor applies if the micro-captive made its capital available to an owner, insured or related party in a way that does not result in taxable income or gain to such owner, insured or related party during the applicable computation period. The Loss Ratio Factor applies if the ratio of the micro-captive's liabilities incurred for insured losses plus claim administration expenses represents a certain percentage or lower of its premiums earned.

Ryan's comment letter took issue with the Financing Factor and the Loss Ratio Factor in the proposed regulations as it does in this complaint. Ryan in the comment letter asserted that the Financing Factor alone was not a reasonable test to determine whether the micro-captive arrangement is a listed transaction and was not supported by existing law. Ryan also argued in its

---

[4] Am. Compl. ¶ 13; Exhibit B
[5] *See* Dkt. 5-2, Exhibit B to the Amended Complaint.
[6] *Id.*

comment letter that the Loss Ratio Factor was not reflective of business realities associated with valid micro-captive arrangements nor was it supported by existing case law.[7] Ryan asserted that the two Factors were, therefore, arbitrary and capricious.

### *Micro-Captive Final Rule--Treasury Decision TD 10029*

On January 14, 2025, Treasury published the Final Rule designating micro-captive transactions as reportable transactions in TD 10029 in the Federal Register. *See* 90 Fed. Reg. 3534, et seq. The Final Rule identified certain micro-captive transactions as listed transactions, a type of reportable transaction, and certain other micro-captive transactions as transactions of interest, another type of reportable transaction.

In the preamble to the Final Rule Treasury responded to significant comments to the proposed regulations. In particular, the preamble described and responded to comments, including Ryan's, concerning: (1) the authority to issue the proposed and final regulations; (2) the Loss Ratio Factor; and (3) the Financing Factor.[8] In response to commenters' concerns that the proposed Loss Ratio Factor for listed transactions was set too high and in light of case law cited by commenters such as Ryan, the final regulations lowered the Loss Ratio Factor for purposes of designating a listed transaction from the proposed 65 percent to 30 percent in the final regulations. The Loss Ratio Factor percentage for identification of a transaction of interest was lowered from the proposed 65 percent to 60 percent in the final regulations after consideration for the nature of captives (as property and casualty companies) and for the types of business lines likely offered by captives according to other commenters and state law. Further, in response to concerns, such as Ryan's, that each Factor alone would not accurately capture those transactions that are listed

---

[7] *See Id.* at 9-10.
[8] 90 Fed. Reg. 3535 (Jan. 14, 2025) (also at Dkt. 5-1, Ex. A to Am. Compl.)

transactions rather than transactions of interest, the final regulations required that the transaction meet *both* the Loss Ratio Factor and the Financing Factor (a conjunctive test) to be designated as a listed transaction.[9]

### *Present Case*

On January 10, 2025, Ryan filed its complaint to challenge the Final Rule prior to the Final Rule being published in the Federal Register on January 14, 2025. Ryan filed its amended complaint a week later. Ryan asserts three causes of action. Ryan alleges that the Final Rule exceeds Treasury's statutory authority to identify reportable transactions because its criteria will capture legitimate micro-captive transactions, presumptively categorizing them as abusive, thereby usurping Congress's authorization of their use.[10] Ryan next alleges that the Final Rule is contrary to law and invalid under the APA because it discourages taxpayers from establishing or maintaining micro-captives electing the alternative tax under Section 831(b), and thus undermining Congress's intent to incentivize such arrangements.[11] Ryan's third cause of action challenges the Final Rule as arbitrary and capricious and otherwise unlawful by failing to adequately examine relevant facts and data, especially with respect to its use of the Loss Ratio Factor in identifying micro-captive transactions as reportable transactions. Ryan contends Treasury failed to explain how that factor is reasonably supported by relevant data and facts and insists Treasury should have replaced it with other tests.[12]

Ryan alleges the Final Rule will imminently injure it by having a negative impact on its tax-consulting business through discouraging current and potential clients from establishing and

---

[9] *See Id.* at 3539-3540.
[10] *See* Am. Compl. ¶¶ 40-41.
[11] *Id.* ¶¶ 43-46
[12] *Id.* ¶¶ 48-53.

maintaining captive insurance companies.[13] Ryan alleges that it will be unable to develop and expand its business in the micro-captive sector, and it will lose revenue, profits, and goodwill.[14]

## IV.    LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissing a case when a court determines it lacks subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming*, 281 F.3d at 161. And "[o]nce a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction." *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 996 (E.D. Tex. 2024) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, assuming the truth of all facts alleged in the complaint, it fails to state a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, a complaint must include "allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

---

[13] *Id.* ¶ 9
[14] *Id.*

## V. ARGUMENT

The United States requests the Court dismiss Ryan's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). The Court lacks jurisdiction and should dismiss the Amended Complaint under Rule 12(b)(1) because Ryan lacks standing. The Court also lacks jurisdiction because the Declaratory Judgments Act in 28 U.S.C. § 2201 bars this suit. Ryan fails to state a claim for relief because its claims fall outside the zone of interest which the statute it relies on is intended to protect. Finally, Ryan's claims under the APA fail to state a claim for relief because the Final Rule was issued within Treasury's authority, is not contrary to the law, and is not arbitrary and capricious.

### A.    The Court lacks jurisdiction because Ryan lacks standing for its claims.

Ryan lacks standing to bring this suit because it has failed to identify an existing or imminent or non-speculative injury. Article III of the U.S. Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST., ART. III, § 2. The doctrine of "standing" gives meaning to this limit by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Indeed, standing demands that someone who files suit "have a personal stake in the dispute." *Food and Drug Admin. v. Alliance for Hippocratic Med.,* 602 U.S. 367, 379 (2004) (citation omitted). As explained below, the focus of standing is a redressable injury in fact, which Ryan utterly fails to allege in its Amended Complaint.

A motion to dismiss for lack of Article III standing is appropriately considered under Federal Rule of Civil Procedure 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Plaintiff bears the burden to establish Article III standing. *Texas v. United States,* 50 F.4th 498, 513 (5th Cir. 2022). To establish standing, Ryan must show (1) an

"injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560. To meet the first of those requirements, Ryan must allege that it has suffered a concrete injury or that such an injury is "imminent" or "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408-09 (2013); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III."). Ryan must establish standing for each claim. *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011). And, as plaintiff, Ryan must "clearly" allege "facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). Ryan cannot meet either of the first two elements, rendering it unnecessary to address the third.

### 1.    *Ryan lacks standing because it fails to establish an injury in fact.*

Ryan lacks standing to bring this suit because it has failed to allege an existing, real or imminent injury. To meet the injury-in-fact requirement, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon. *All. for Hippocratic Med.*, 602 U.S. at 381. When a party alleges a potential future injury—such as potential downstream economic injuries—from a regulation that does not directly regulate the party itself, the question is whether the government's regulation will likely cause a concrete and particularized injury to the "unregulated plaintiff." *Id.* at 383.

Ryan's alleged harm is not real, concrete, or imminent but speculative, at best. Ryan's primary, if not sole, allegation of harm is as follows:

> The [Final] Rule causes Ryan imminent financial injury because it discourages current clients and potential clients from establishing and maintaining captive insurance companies. Accordingly, the Rule will have a negative impact on Ryan's tax-consulting

11

business, including by preventing Ryan from developing and expanding its business in the micro-captive sector. Thus, Ryan will lose revenue, profits, and goodwill.[15]

This allegation fails to create standing. The Final Rule is a disclosure requirement, nothing more. If a micro-captive arrangement meets certain factors, a disclosure statement must be filed with the IRS. The Final Rule does not prevent the use of Section 831(b), nor does it change the statutory requirements for a valid election thereunder. The Final Rule neither prevents nor discourages the use of legitimate micro-captive arrangements because nothing has changed regarding their use or taxability. Thus, it is entirely speculative to assume that the Final Rule will discourage Ryan's alleged current or potential future clients from using micro-captive arrangements. Ryan's allegations to the contrary lack real, concrete, or actual harm and are pure speculation.

The Final Rule also does not address marketing, much less prevent the marketing of micro-captive insurance arrangements. Moreover, Ryan does not allege that its role as a "consulting business" would require it to make any disclosures pursuant to the Final Rule. Thus, the Final Rule does not prohibit the marketing of micro-captive insurance arrangements, by Ryan or anyone else. Consequently, Ryan's allegations that the Final Rule somehow harms its business is not real, concrete or actual harm, but at best mere speculation based on the actions of third parties.

### 2. *Ryan's alleged harm is too speculative to establish causation.*

Ryan's alleged harm is too speculative to establish the causation element of standing. When a plaintiff challenges the government's regulation of a third-party, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan,* 504 U.S. at 562.

---

[15] *See* Am. Complaint ¶ 9. Ryan may be a "material advisor" subject to the Final Rule; however, it has not alleged as much in the Amended Complaint, nor specified any harm it may face from any requirement it may have to comply with the rule's reporting requirements. This motion's challenge to Ryan's standing does not address this possibility because it is a "facial" challenge based solely on the allegations contained in the Amended Complaint.

Further, to meet the traceability or causation requirement, a plaintiff generally cannot "rely on speculation about the unfettered choices made by independent actors not before the court." *Clapper*, 568 U.S. at 414 n.5. The causation requirement precludes speculative links, that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs. See *Allen v. Wright,* 468 U.S. at 737, 757–759 (1984).

Ryan's allegation that its clients are discouraged from establishing and maintaining captive insurance companies which in turn will impact Ryan's business reflects mere speculation about what clients might do in the future and how that might impact Ryan. Indeed, Ryan's basis for standing impermissibly relies on how third parties (who want to establish legitimate micro-captive insurance agreements) might react to the Final Rule and then how that unknown reaction might impact Ryan's future business. Such a leap runs afoul of the established Supreme Court precedent laid out above. Ryan's alleged harm is especially speculative because a legitimate micro-captive insurance arrangement that meets the requirements of the applicable tax statutes, Treasury regulations, and relevant case law will pass muster with or without the Final Rule.

Moreover, Ryan's allegation of harm is sufficiently speculative in that what Ryan apparently wants is for its potential future customers not to have to report to the IRS the micro-captive insurance arrangements that it markets or promotes, at all. Perhaps Ryan's seeks to promote the idea that their micro-captive insurance arrangements are legitimate and escape any detection by the IRS. Thus, Ryan speculates that its promotions would be more effective if clients could escape IRS detection by avoiding the reporting requirement altogether. Ryan's alleged harm from the Final Rule is thus not about promoting their micro-captive insurance arrangements. It is about losing the ability to promote that their arrangements will not have to be disclosed to IRS. Thus, Ryan's alleged injuries are not traceable to the IRS's reporting requirements, but to its own

13

apparent model of how it intends to promote its business. In any event, Ryan's alleged harm is too speculative to establish an injury or causation for standing.

**B.     The Court lacks jurisdiction because this suit is "with respect to Federal taxes" and is thus barred by the Declaratory Judgment Act**

Ryan cites 28 U.S.C. § 2201, the Declaratory Judgment Act ("DJA"), as part of the alleged jurisdictional bases for its amended complaint.[16] The DJA, though, does not confer subject matter jurisdiction on a federal court where none otherwise exists. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 149 (5th Cir. 1988). Indeed, this statute actually bars Ryan's suit. Ryan must have standing to bring suit, since a declaratory judgment is available only in circumstances "where an 'actual controversy' exists." *Orix Credit All. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). Thus, if a plaintiff lacks standing, then there is no actual controversy to which the DJA may apply.

The DJA also deprives a court of jurisdiction that might otherwise exist in cases "with respect to Federal taxes." *Warren v. United States*, 874 F.2d 280, 282 (5th Cir. 1989); *see also Rivero v. Fidelity. Investments, Inc.*, 1 F.4th 340, 345 (5th Cir. 2021) *cert. denied* 142 S. 142 S.Ct. 1670 (Mem) (U.S., 2022). The DJA provides that "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code," any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

Recently, the court in *Rivero v. Fidelity Investments* held that the review of a Treasury Regulation is an action or request for relief "with respect to Federal taxes" that is prohibited by

---

[16] Ryan also cites 28 U.S.C. §§ 1331 and 1346 as jurisdictional bases for its suit, but they neither provide an independent basis for jurisdiction nor waive the United States' sovereign immunity. While 28 U.S.C. § 1331 establishes a Court's jurisdiction over federal questions, it does not provide a waiver of sovereign immunity. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989). 28 U.S.C. § 1346(a)(2), applies only to suits for money damages and not suits for equitable relief. *Hunsucker v. Phinney*, 497 F.2d 29, 36 (5th Cir. 1974). 28 U.S.C. 1346(a)(1) provides jurisdiction for the recovery of any internal revenue tax. Ryan is not seeking a return or recovery of federal income taxes nor monetary relief, so 28 U.S.C. 1346(a)(1) and (a)(2) do not apply.

the DJA. *Rivero v. Fidelity*, 1 F.4th at 346. The Fifth Circuit Court of Appeals examined the text and structure of the DJA's federal-tax exception to determine that the exception is a jurisdictional condition that divests subject matter jurisdiction in a case even when the Anti-Injunction Act is not applicable. *Id.* at 345. Specifically, it held the DJA's Federal tax exception barred a suit that is "with respect to Federal taxes" even when the "action does not involve 'the assessment or collection of any tax,' such that the AIA does not frustrate jurisdiction" because "the AIA [was] simply inapplicable." *Id.* at 345-346.

The DJA's Federal tax exception divests the Court of jurisdiction over Ryan's case, under its plain meaning. Federal courts interpret any statute according to its plain language. *See In re Vitro S.A.B.de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012); *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). In the present case, the Final Rule identifies certain micro-captive transactions as either listed transactions or transactions of interest as those terms are used in tax administration. Ryan seeks a declaration that this regulation is "unlawful in violation of the APA."[17] Thus, Ryan's request for declaratory relief is with respect to federal taxes, is barred by the DJA, and should be dismissed for lack of subject matter jurisdiction.

**C.    Ryan's complaint should be dismissed because it falls outside the zone of interest to be protected under the APA and Section 831(b).**

Even if Ryan could establish Article III standing, or somehow avoid the bar placed on this suit by the DJA, it would remain unable to succeed on the merits because its claims are outside the zone of interest to state a claim under the APA. A person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: the interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated.

---

[17] Am. Compl., Request for Relief, ¶ (A).

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This means that a plaintiff in a suit such as this "must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (U.S.1990).

Whether Ryan's interests fall within the zone-of-interest test, though, is not determined by reference to the APA but, instead, by reference to the statutory provisions, regulations, or constitutional guarantees that it alleges were violated. *See Id.* at 886. This zone of interest test "forecloses suit . . . when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the [provision alleged to have been violated] that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). The "essential inquiry is whether Congress 'intended for [a particular] class [of plaintiffs] to be relied upon to challenge'" the agency's action. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

Here, the relevant statute is Section 831(b). Ryan alleges that the Final Rule will overclassify a substantial number of legitimate micro-captive insurers formed and operating under Section 831(b) as illegitimate tax-avoidance schemes and will: (1) invalidate proper elections under Section 831(b);[18] (2) dissuade taxpayers from establishing micro-captives;[19] and (3) fail to meet the IRS's goal of targeting abuses of Section 831(b).[20] Ryan further contends that this will

---

[18] Am. Compl. ¶ 41.
[19] *Id.* ¶ 46.
[20] *Id.* ¶ 51.

discourage its clients from establishing and maintaining captive insurance companies, which, in turn, will have a negative economic impact on Ryan's consulting business.[21] However, these alleged injuries fall outside the "zone of interest" of the statute upon which Ryan relies.

Section 831(b) is titled "Alternative tax for certain small companies" and provides that upon election by an eligible nonlife insurance company to be taxed under Section 831(b), in lieu of the tax otherwise imposed by Section 831(a), Section 831(b) imposes tax on the company's income computed by multiplying the taxable investment income of the eligible electing company for the taxable year by the rates provided in Section 11(b) of the Code. In other words, a qualifying electing insurance company under Section 831(b) pays no tax on its underwriting income up to $2,200,000.

Section 831(b) does not directly or indirectly address or even discuss the relationship between the insurance company and a consulting company. Nor does Section 831(b) discuss or address marketing of micro-captives by third parties. The Final Rule does not change any of the requirements to make an election under Section 831(b). Nor does the Final Rule change any requirements or definitions for a qualifying non-life insurance company. The Final Rule is a reporting regulation that applies to participants (insurance companies) and material advisors.

Ryan is not an insurance company making an election under Section 831(b) nor a participant to a reportable transaction identified by the Final Rule. Ryan has not alleged that it is a material advisor subject to the Final Rule. Ryan is a consulting company. Section 831(b) is a part of a statute that is specific to the taxation of non-life insurance companies, not consultants. The Final Rule was enacted as a reporting requirement for insurance companies and material advisors to certain micro-captive transactions. Thus, Ryan's alleged injuries here are only "marginally

---

[21] *Id.* ¶ 9.

related" to and, therefore, outside the zone of interests of, the provision's purposes. *See Nat'l Wildlife Fed'n*, 497 U.S. at 883. Consequently, Ryan's case should be dismissed.

**D.    All of Ryan's APA claims should be dismissed for failure to state a claim.**

Each of Ryan's three APA causes of action should be dismissed for failure to state a claim. They rely on faulty legal theories and assert insufficient facts to support relief. The Court may dismiss a claim under Rule 12(b)(6) if the complaint either fails to assert a cognizable legal theory, or the facts asserted are insufficient to support relief under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1.    *Treasury acted within its statutory authority when issuing the Final Rule*

Ryan's first cause of action should be dismissed for failure to state a claim because Treasury acted within its statutory authority when issuing the Final Rule. Ryan alleges that the Final Rule exceeds Treasury's statutory authority to identify transactions that have a potential for tax avoidance or evasion because it will classify a substantial number of legitimate micro-captive insurers operating consistently with Section 831(b) as presumptively or potentially illegitimate tax-avoidance schemes.[22] Ryan asserts that Congress took the necessary steps to prevent potential abuses of micro-captive arrangements in the PATH Act. It asserts that in issuing the Final Rule, Treasury exceeded its statutory authority and ignored Congress's intent to promote micro-captive arrangements.[23] Specifically, Ryan argues that the Final Rule imposes additional limitations and burdens upon the use of captive insurance companies that Congress has not authorized.[24]

These allegations are all beside the point. Treasury acted within the express delegation of authority under Section 6707A(c)(1) to issue the Final Rule. Congress has authorized and tasked

---

[22] Am. Compl. ¶ 41
[23] *Id.* at ¶ 2.
[24] *Id.* at ¶ 3.

the Treasury with identifying transactions with the risk of tax avoidance. *See* 26 U.S.C. §§ 6011, 6111, and 6707A(c)(1). Section 6707A(c)(1) defines a reportable transaction as "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under Section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." This statutory requirement is fulfilled by Treas. Reg. §1.6011-4, which requires the disclosure of participation in reportable transactions, including listed transactions that are "identified by notice, regulation, or other form of published guidance." The regulations under Sections 6011 and 6111 require that a participant in a reportable transaction, and a material advisor with respect to a reportable transaction disclose such to the IRS. 26 C.F.R. §§1.6011-4, 301.6111-1.

The Treasury issued the Final Rule under its statutory authority to fulfill the requirement from Congress to obtain information by disclosure of transactions that could have a potential for tax avoidance or evasion. *See* 26 U.S.C. § 6707A(c)(1). Plaintiff's argument that Treasury exceeded its statutory authority in issuing the Final Rule because Congress had already acted through the PATH Act to clarify requirements under Section 831(b) regarding micro-captive arrangements fails because the Final Rule is neither issued under the authority of Section 831(b) nor does it change any requirements of Section 831(b). Ryan may disagree with the Final Rule, but the Final Rule was issued within the plain meaning of the statutory authority delegated to Treasury through Sections 6011, 6111, and 6707A. Thus, Ryan's first cause of action should be dismissed for failure to state a claim.

### 2.    *The Final Rule is not contrary to law, specifically Section 831(b).*

Ryan's second cause of action should be dismissed for failure to state a claim upon which relief can granted because the Final Rule is not contrary to law. Ryan alleges that the Final Rule

imposes additional limitations and burdens on micro-captives that are contrary to the intent Congress demonstrated through the PATH Act to ensure the continued availability of micro-captive insurance programs under Section 831(b).[25] Ryan's argument fails because the Final Rule imposes no substantive restrictions on micro-captives nor does it alter the determination of the allowance or disallowance of a Section 831(b) election. Simply, the Final Rule does not change Section 831(b).

The Final Rule is a disclosure requirement, not a disallowance regulation. The Final Rule merely triggers the disclosure requirements if certain criteria are met. In other words, the Final Rule does not create any law that is contrary to any statute; rather, the Final Rule merely identifies transactions that must be disclosed per the existing rules with respect to reportable transactions, as Sections 6707A(c), 6011, and 6111 prescribe. Ryan's second cause of action should be dismissed for failure to state a claim.

### 3. *The Final Rule, TD 10029, is not arbitrary and capricious.*

The APA directs that courts may "set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project,* 592 U.S. 414, 423 (2021). This standard is "deferential." *Id.* Under it, courts consider whether an agency "articulate[d] a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). Courts will decide whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 285 (1974). While courts

---

[25] *Id.* ¶¶ 43-46.

will not "supply a reasoned basis for the agency's action," they will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43.

The Final Rule is not arbitrary and capricious since Treasury considered comments received and explained its decisions and responses to the comments at length in issuing the Final Rule. Ryan alleges that the Final Rule is invalid because it does not include discussion or examination of relevant facts and data supporting its decision to identify certain micro-captive arrangements listed transactions and transactions of interest.[26] Ryan cites *CIC Servs., LLC v. IRS*, 592 F. Supp. 3d 677, 687 (E.D. Tenn. 2022) for its contention that the Final Rule is arbitrary and capricious.[27] In *CIC Services*, the court held that Notice 2016-66 was invalid. Considering the decision by the district court in *CIC Services* and other judicial decisions to vacate Notice 2016-66, Treasury published the proposed regulations and obsoleted Notice 2016-66. The NPRM provided for a comment period from April 11, 2023, through June 12, 2023, and more than 100 comment letters were received. Treasury conducted a public hearing on July 19, 2023, providing further opportunity for taxpayers to comment on the proposed regulations. Contrary to Ryan's allegations, Treasury considered the comments received and explained its decisions and responses to the comments at length in the preamble to the Final Rule. *See* 90 Fed. Reg. at 3,535–3,558.

Treasury's use of the Loss Ratio Factor and Financing Factor was a reasoned process that considered the comments, case law on micro-captives, and other factors. Just because Ryan disagrees with Treasury's approach or views, does not render the Final Rule arbitrary and capricious. Ryan alleges that the Final Rule is invalid because the relevant data does not support its decision to use the two factors as criteria for identifying abusive and potentially abusive micro-

---

[26] Am. Compl. ¶¶ 48-53.
[27] *Id.* ¶ 49.

captive transactions.[28] Nevertheless, Treasury adequately explained how it determined the Loss Ratio Factor. *See* Fed. Reg. 3534, 3541 (preamble to TD 10029). Treasury selected a low loss ratio for transactions identified as listed transactions, in response to comments indicating that the Tax Court's holding in *R.V.I. Guar. Co., Ltd. & Subs. v. Commissioner*, 145 T.C. 209 (2015) supported a lower loss ratio. *Id*. In *R.V.I.*, the Tax Court listed a micro-captive's loss ratios ranging from a low of 0.2 percent to a high of 97.9 percent. *Id.* at 216. The Court in *R.V.I.,* determined that for the five ten-year periods analyzed the loss ratios ranged from a low of 28 percent to a high of 35 percent. The average ten-year loss ratio of in the *R.V.I.* case was 32 percent. Treasury considered the comments and case law and reduced the Loss Ratio factor to 30 percent in the Final Rule. *See* 90 Fed. Reg. at 3541.

Likewise, Treasury adequately explained the basis for selecting a 60% Loss Ratio Factor for transactions identified as transactions of interest. *Id*. at 3542. Treasury selected the percentage based on national averages for non-life insurance companies subject to tax under Section 831, which includes micro-captives. *Id*. To determine an average loss ratio factor for use in the Final Rule, Treasury considered the annual NAIC Report on Profitability by Line by State for each year from 2013 through 2022 to understand a typical property and casualty company loss ratio. *Id.* Treasury removed business lines that captives are generally not permitted to cover and computed the average modified ten-year loss ratio at approximately 67%, which would be slightly higher than modified Loss Ratio Factor of 65% set forth in the proposed regulations. *Id*.

However, after considering the commenters' concerns that the proposed percentage was too high, Treasury the lowered the Loss Factor to 60% in the Final Rule. *Id.* In reaching its determination, the IRS cited all sources of information and noted the failure of commenters to

---

[28] *Id.* ¶¶ 49-53.

identify data sets that would be more appropriate. *Id.* Treasury also adequately explained that the Financing Factor arises from financing arrangements in abusive micro-captive transactions where amounts paid as premiums avoided ordinary taxation and continued to avoid tax while back in the hands of the related parties who caused the premiums to be paid and deducted. *Id.* at 3546. The Treasury cited several recent cases in which the Tax Court held certain micro-captive arrangements did not qualify as insurance arrangements for federal tax purposes. *Id.*

 As further evidence of reasonableness and objectiveness, Treasury considered the comments that the Financing Factor alone would cause too many micro-captives to be reported. In response, Treasury provided in the Final Rule that a transaction must meet both the Loss Ratio Factor and the Financing Factor (a conjunctive test), rather than only one, to be designated as a listed transaction subject to disclosure. *Id.* The objectivity and reasonableness of each factor is discussed fully throughout the preamble of the Final Rule. Therefore, the factors Treasury used to identify the Micro-captive Listed Transaction, and the Micro-captive Transaction of Interest are not arbitrary or capricious. The factors are objective and reasonably determined, based on relevant factors in existing statutory provisions, on available industry data, and on a careful review of case law. It is beside the point that Ryan or other commenters may have chosen other factors.

 Finally, Ryan alleges that the Final Rule is arbitrary and capricious because the Treasury failed to consider the risk that the criteria imposed by the Final Rule will make it difficult for micro-captives to maintain a sufficient surplus as required by state laws and therefore less likely that they will be able to pay claims.[29] This allegation is unfounded because the IRS did in fact address commenters' concerns regarding solvency in the preamble. 90 Fed. Reg. at 3545. The IRS explained that the Final Rule does not require captives to do anything beyond filing a form and

---

[29] Am. Compl. ¶ 53.

that nothing in the rule requires, encourages, or allows micro-captives to make contractual promises that exceed risk-bearing capabilities. *Id.*

Simply, Ryan disagrees with the Treasury's views and wants to substitute its own view in place of Treasury's. However, the Treasury is authorized by Congress to enact disclosure requirements, not Ryan. Treasury considered Ryan's comments as it did all the comments to the NPRM and made a reasoned and objective decision regarding the Final Rule. The Final Rule should be upheld because is not "arbitrary and capricious." Thus, Ryan's third cause of action should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## VI. CONCLUSION

Based on the foregoing, the Court should dismiss Ryan's Amended Complaint it its entirety under Rule 12(b)(1) and/or Rule 12(b)(6).

*/s/ Michael W. May*
HERBERT W. LINDER
Ohio Bar No. 0065446
MICHAEL W. MAY
Texas bar. No. 24054882
Trial Attorney, Tax Division
Department of Justice
1700 Pacific Ave., Suite 3700
Dallas, Texas 75201
(214) 880-9754 (Linder)
(214) 880-9730 (May)
(214) 880-9741 (facsimile)
Herbert.W.Linder@usdoj.gov
Michael.W.May@usdoj.gov

*Counsel for Defendant*
*United States of America*