# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| **RYAN, LLC**, | |
| *Plaintiff*, | |
| v. | Civil Action No. 3:25-cv-00078-B |
| **INTERNAL REVENUE SERVICE; the Hon. MICHAEL FAULKENDER, Acting Commissioner of the Internal Revenue Service, in his official capacity,** | |
| *Defendants*. | |

## RESPONSE TO MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 7

    I.     The IRS's threshold arguments fail.................................................................. 7

        A.    Ryan has standing because it is directly regulated by the Final Rule, which will directly harm it. ................................................................................................ 7

        B.    Ryan falls within the zone of interests protected by the statute because it is regulated by the Final Rule. ................................................................................................. 10

        C.    The Declaratory Judgment Act does not deprive this Court of jurisdiction over this suit brought under the Administrative Procedure Act. .................................................... 11

    II.    Ryan has properly stated APA claims......................................................... 15

        A.    Ryan has properly stated an APA claim that the Final Rule exceeds the IRS's authority and is contrary to law. ................................................................................. 15

        B.    Ryan has properly stated an APA claim that the Final Rule is arbitrary and capricious. ................................................................................................................. 18

            1.    The IRS's arguments are premature because it has not yet filed the Administrative Record. ................................................................................................. 19

            2.    In any event, Ryan has properly alleged that the Final Rule is arbitrary and capricious. ................................................................................................................. 21

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arena v. Graybar Elec. Co.*,
   669 F.3d 214 (5th Cir. 2012) .....................................................................................9

*Atieh v. Riordan*,
   727 F.3d 73 (1st Cir. 2013) ...........................................................................19, 20, 21

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................................11

*Bob Jones Univ. v. Simon*,
   416 U.S. 725 (1974) ..................................................................................................13

*Camp v. Pitts*,
   411 U.S. 138 (1973) ...........................................................................................19, 21

*Carpenters Indus. Council v. Zinke*,
   854 F.3d 1 (D.C. Cir. 2017) .......................................................................................9

*CIC Servs., LLC v. IRS*,
   592 F. Supp. 3d 677 (E.D. Tenn. 2022) ...........................1, 4, 13, 14, 16, 18, 21, 22

*CIC Servs., LLC v. IRS*,
   593 U.S. 209 (2021) ..............................................................2, 4, 6, 11, 12, 14

*Clarke v. Secs. Indus. Ass'n*,
   479 U.S. 388 (1987) .......................................................................................2, 10, 11

*Cohen v. United States*,
   650 F.3d 717 (D.C. Cir. 2011) .................................................................................13

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*
   *(HAVEN)*,
   915 F.2d 167 (5th Cir. 1990) ...................................................................................14

*Contender Farms, LLP v. USDA*,
   779 F.3d 258 (5th Cir. 2015) ..................................................................................7, 8

*Cooper v. Texas Alcoholic Beverage Comm'n*,
   820 F.3d 730 (5th Cir. 2016) ...................................................................................10

*Corbett v. TSA*,
   19 F.4th 478 (D.C. Cir. 2021) ....................................................................................8

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ...........................................................................15

*Farrell v. Tillerson*,
    315 F. Supp. 3d 47 (D.D.C. 2018) ...................................................................20

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) .........................................................................................25

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*,
    668 F.3d 281 (5th Cir. 2012) .............................................................................9

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) .........................................................................................19

*Girling Health Care, Inc. v. Shalala*,
    85 F.3d 211 (5th Cir. 1996) .............................................................................19

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) .........................................................................................15

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ...................................................................................15, 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................7, 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .........................................................................................12

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .........................................................................................10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .....................................................................................21, 24

*Nat'l Ass'n for Gun Rts., Inc. v. Garland*,
    741 F. Supp. 3d 568 (N.D. Tex. 2024) ............................................................19

*Osborn v. Visa Inc.*,
    797 F.3d 1057 (D.C. Cir. 2015) .......................................................................10

*R.V.I. Guar. Co. & Subsidiaries v. Comm'r*,
    145 T.C. 209 (2015) ...............................................................................2, 23, 24

*Rent-A-Ctr., Inc. v. Comm'r*,
    142 T.C. 1 (2014) .......................................................................................24, 25

*Rivero v. Fid. Invs., Inc.*,
　　1 F.4th 340, 343 (5th Cir. 2021) ........................................................14, 15

*Stockman v. Fed. Election Comm'n*,
　　138 F.3d 144 (5th Cir. 1998) .....................................................................12

*Summa Holdings, Inc. v. IRS*,
　　848 F.3d 779 (6th Cir. 2017) ...............................................................17, 18

*Swedish Am. Hosp. v. Sebelius*,
　　691 F. Supp. 2d 80 (D.D.C. 2010) ......................................................20, 21

*Texas v. EEOC*,
　　933 F.3d 433 (5th Cir. 2019) .........................................................2, 7, 8, 12

*Texas v. United States*,
　　787 F.3d 733 (5th Cir. 2015) .....................................................................11

*Three Expo Events, LLC v. City of Dallas, Texas*,
　　907 F.3d 333 (5th Cir. 2018) .....................................................................10

*Vargus v. McHugh*,
　　87 F. Supp. 3d 298 (D.D.C. 2015) ............................................................20

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
　　749 F.2d 788 (D.C. Cir. 1984) .............................................................19, 20

*Warren v. United States*,
　　874 F.2d 280 (5th Cir. 1989) .....................................................................13

*Watkins v. Lujan*,
　　922 F.2d 261 (5th Cir. 1991) .......................................................................9

*Yogi Metals Grp. Inc. v. Garland*,
　　567 F. Supp. 3d 793 (S.D. Tex. 2021) ......................................................19

**Statutes**

5 U.S.C. § 702..................................................................................................12

5 U.S.C. § 703..................................................................................................12

5 U.S.C. § 704..................................................................................................12

5 U.S.C. § 706.............................................................................................12, 19

26 U.S.C. § 831(b) ..........................................................1, 3, 5, 11, 16, 17, 18

26 U.S.C. § 6111 ...............................................................................................8

26 U.S.C. § 6112(a) ...................................................................................................6

26 U.S.C. § 6707(b) ...................................................................................................6

26 U.S.C. § 6707A(b) .................................................................................................6

26 U.S.C. § 6707A(c) ..............................................................................5, 16, 18, 25

26 U.S.C. § 6708(a) ...................................................................................................6

26 U.S.C. § 7203 ........................................................................................................6

26 U.S.C. § 7421(a) .................................................................................................13

28 U.S.C. § 1331 ......................................................................................................12

28 U.S.C. § 2201 ................................................................................................12, 14

Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, 129 Stat 2,242
    (2015)..........................................................................................................3, 16, 17

Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2,085 (1986) ...............3, 16

**Other Authorities**

26 C.F.R. § 1.6011-4(b) .............................................................................................5

26 C.F.R. § 1.6011-4(d) .............................................................................................6

26 C.F.R. § 1.6011-10(b) .........................................................................................17

26 C.F.R. § 1.6011-10(c) .....................................................................................5, 23

26 C.F.R. § 1.6011-10(g) ...........................................................................................5

26 C.F.R. § 1.6011-10(h) .......................................................................................6, 8

26 C.F.R. § 1.6011-11(c) ...............................................................................5, 23, 25

26 C.F.R. § 1.6011-11(h) .......................................................................................6, 8

26 C.F.R. § 301.6111-3(b) .....................................................................................5, 8

26 C.F.R. § 301.6111-3(d) .........................................................................................6

26 C.F.R. § 301.6707A-1 ...........................................................................................4

88 Fed. Reg. 21,547 (Apr. 11, 2023) .........................................................................4

90 Fed. Reg. 3,534 (Jan. 14, 2025) ..............................1, 4, 5, 10, 17, 21, 22, 23, 24, 25

IRS Rev. Rule 2001-31 (2001) ...............................................................................................16

IRS Rev. Rule 77-316 (1977) ............................................................................................3, 16

## INTRODUCTION

The IRS's motion to dismiss Ryan, LLC's Administrative Procedure Act ("APA") challenge to the IRS's Final Rule, 90 Fed. Reg. 3,534 (Jan. 14, 2025), should be denied. The Final Rule concerns entities known as "micro-captive insurance companies"—or "micro-captives," for short. Micro-captives provide insurance to the affiliated company that owns the captive and, potentially, to other non-affiliated companies by risk distribution. This allows small businesses to obtain and provide insurance where the market otherwise does not. Congress has repeatedly made clear that it views micro-captives as legitimate and desirable business entities, not illicit tax havens. *See* 26 U.S.C. § 831(b) (granting micro-captives tax advantages).

Even though Congress has expressly approved of micro-captive insurance companies, the IRS has waged a years-long campaign across both the Biden and Obama administrations against micro-captives. In fact, this Final Rule, published in the last week of the Biden administration, is just a slightly updated version of a previous IRS attempt to perniciously regulate micro-captives that started during the last months of the Obama administration (IRS Notice 2016-66). Just like that previous attempt, this Final Rule grossly over designates transactions involving micro-captives as "reportable transactions," which means micro-captives and their advisors must make onerous disclosures to the IRS. A federal district court held the Obama administration's prior micro-captive action unlawful, correctly observing that the IRS "does not have a great history of complying with APA procedures" or following "the basic rules of administrative law." *CIC Servs., LLC v. IRS*, 592 F. Supp. 3d 677, 688 (E.D. Tenn. 2022) (citation omitted). As that court ultimately concluded, the IRS failed to demonstrate that "micro-captive insurance arrangements have the potential for tax avoidance or evasion." *Id.* at 687. This Final Rule suffers from the same defect.

1

The IRS's three threshold arguments each fail. *First*, Ryan has standing because it is directly regulated by this Final Rule. *See Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (citation omitted). *Second*, for similar reasons, Ryan easily satisfies the lenient APA zone-of-interests test, as Ryan is the "subject of the contested regulatory action." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 399 (1987). *Third*, the Declaratory Judgment Act does not bar this suit because the Supreme Court recently rejected a virtually identical argument made by the IRS about the coterminous Anti-Injunction Act. *CIC Servs., LLC v. IRS*, 593 U.S. 209, 219-20 (2021).

In addition, the IRS's bid to dismiss Ryan's arbitrary-and-capricious claims is premature. The IRS has not filed the Administrative Record, and this Court cannot evaluate those arguments without it. Even if it could, the Final Rule is arbitrary and capricious for the same reasons that Notice 2016-66 was—and more. In particular, the Final Rule assumes that micro-captives that pay claims infrequently are illegitimate. But that is an unreasonable "methodological error." *R.V.I. Guar. Co. & Subsidiaries v. Comm'r*, 145 T.C. 209, 227 (2015). Many micro-captives are *designed* to "provide insurance coverage for infrequent or catastrophic risks." First Am. Compl. ¶ 30. Micro-captives will thus often go years without paying claims—until a disaster triggers massive claims. The Final Rule unreasonably treats legitimate and prudent risk management as tax evasion.

This Court should deny the IRS's motion to dismiss, order the IRS to file the Administrative Record promptly, and proceed to dispositive motions based upon that record.

## BACKGROUND

### A.    The IRS's Unlawful Campaign Against Captive Insurance Companies

Captive insurance companies provide insurance to the parent company that owns the captive as at least a part of their risk portfolio. *See CIC Servs.*, 593 U.S. at 213. Businesses establish captive insurance companies because they often offer significant benefits compared to commercial insurance. For instance, captive insurance companies are often the only way to insure risks that

2

the commercial insurance market may not cover at all or may not cover on commercially accepta-

ble terms, like the risk of business interruption caused by a pandemic or terrorism. First Am.

Compl. ¶ 30. Captive insurance companies can also provide significant cost-savings compared to

the price of insurance in the commercial marketplace, which prices premiums to cover the com-

mercial insurer's marketing and brokerage commissions, administrative expenses, and profits. *Id.*

Given the many benefits that captive insurance companies provide, Congress has encour-

aged "small companies" to form captive insurance companies, often called micro-captives. *See* 26

U.S.C. § 831(b). In 1977, the IRS issued Revenue Rule 77-316, which treated captive insurance

companies as part of the same "economic family" as the parent businesses they insure and prohib-

ited deduction of the premiums paid to the captive insurance company. Congress responded by

expressly giving micro-captives tax preference. Tax Reform Act of 1986, Pub. L. No. 99-514, 100

Stat. 2,085 2,405-06 (1986) (codified at 26 U.S.C. § 831(b)). Those micro-captives paid taxes only

on investment income, not on premiums received, as long as premiums did not exceed $1,200,000

per year. Decades later, in 2015, Congress expanded the tax advantages even further by making

micro-captives with up to $2,200,000 in yearly premiums eligible. *See* Consolidated Appropria-

tions Act of 2016, Pub. L. No. 114-113, 129 Stat 2,242, 3,106-08 (2015). Congress also clarified

the "diversification requirements" necessary for micro-captives to receive tax advantages, thus

reducing the risk of abuses. *Id.* at 3,106.

Despite Congress's attempts to encourage small businesses to form micro-captives, the IRS

has unlawfully targeted the micro-captive insurance industry. On November 21, 2016, the year

after Congress expanded the tax preferences for micro-captives, the IRS published Notice 2016-

66. That Notice identified certain transactions related to micro-captive insurance companies as

"reportable transactions," and the Notice required "taxpayers and their material advisors" to "collect and submit detailed information about micro-captive transactions and their participants." *CIC Servs.*, 593 U.S. at 213, 220; *see also* 26 C.F.R. § 301.6707A-1 (authorizing penalties for nondisclosure of reportable transactions). But the Notice covered many legitimate transactions that reflected the ordinary and good faith operation of captive insurance companies. Ryan and CIC Services, LLC—both of which assist small companies in creating and managing captive insurance companies—therefore challenged Notice 2016-66. *See* ECF 1 ¶¶ 3-4, *CIC Servs.*, 592 F. Supp. 3d 677 (No. 3:17-cv-00110).

The IRS moved to dismiss on the grounds that the suit sought to restrain "the assessment or collection of any tax," in violation of the Anti-Injunction Act. *CIC Servs.*, 593 U.S. at 216 (citation omitted). The district court agreed and dismissed the challenge, but the Supreme Court eventually reversed. The suit "target[ed]" the Notice's "upstream reporting mandate, not the downstream tax," and so "the Anti-Injunction Act imposes no bar." *Id.* at 223. On remand, the district court vacated Notice 2016-66 because the IRS issued it without notice or comment and did not support the Notice with "relevant data and facts" proving that "micro-captive insurance arrangements have the potential for tax avoidance or evasion." *CIC Servs.*, 592 F. Supp. 3d at 683-88.

### B.    The Final Rule Challenged in this Lawsuit

The IRS proposed a regulation that would substantially restore the reporting requirements imposed by Notice 2016-66. *See* 88 Fed. Reg. 21,547 (Apr. 11, 2023). As before, the proposed regulations promised to subject most legitimate micro-captive transactions to unnecessary and unwarranted IRS scrutiny. Ryan and dozens of other commenters identified flaws in the proposed rule, including its rigid, arbitrary criteria for identifying allegedly abusive micro-captive transactions. *See, e.g.*, ECF 5-2. The IRS nevertheless published the Final Rule on January 14, 2025. 90 Fed. Reg. 3,534.

Like Notice 2016-66, the Final Rule defines certain transactions involving captive insurance companies formed under 26 U.S.C. § 831(b) as "listed transactions" and "transactions of interest." 90 Fed. Reg. at 3,534. A transaction involving a captive insurance company is a "listed transaction"[1] for purposes of Treasury Regulation § 1.6011-4(b)(2) if: (1) during the last five taxable years, the captive "directly or indirectly" provided financing to an owner, an insured, or a related person; and (2) during the last ten taxable years, the captive's "liabilities incurred for insured losses and claim administration expenses . . . [were] less than 30 percent of the amount" of "premiums earned . . . less policyholder dividends." 26 C.F.R. § 1.6011-10(c)(1)-(2). A transaction is a "transaction of interest"[2] if, during the last ten taxable years, the captive's "amount of liabilities incurred for insured losses and claim administration expenses" was "less than 60 percent of the amount" of "premiums earned . . . less policyholder dividends paid." *Id.* § 1.6011-11(c)(2). A transaction involving a captive insurance company can also be a "transaction of interest" if during the most recent five taxable years, the captive insurer "directly or indirectly" made any portion of payments under an insurance contract available as financing to an owner, an insured, or a related person. *Id.* § 1.6011-11(c)(1).

Taxpayers that engage in those transactions and material advisors that assist the taxpayers must collect and submit extensive disclosures to the IRS. *See id.* § 1.6011–10(g) (describing the disclosure requirements); *id.* § 301.6111–3(b) (defining "material advisor" as any person that "provides any material aid, assistance, or advice with respect to organizing, managing, promoting, selling, implementing, insuring, or carrying out any reportable transaction" and receives income

---

[1]    A "listed transaction" is "a transaction that is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction." 26 U.S.C. § 6707A(c)(2).

[2]    A "transaction of interest" is a transaction the IRS has determined has "a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1); *see* 26 C.F.R. § 1.6011–4(b)(6).

in return). The taxpayers and material advisors must each submit a separate form that "describe[s] the expected tax treatment and all potential tax benefits expected to result from the transaction, describe[s] any tax result protection . . . with respect to the transaction, and identif[ies] and describe[s] the transaction in sufficient detail for the IRS to be able to understand the tax structure of the reportable transaction and the identity of all parties involved in the transaction." *Id.* § 1.6011–4(d); *see also id.* § 301.6111–3(d)(1) (materially identical requirements for material advisors). The disclosure requirements are not only prospective, but retrospective. Taxpayers that have filed a tax return "reflecting their participation in transactions described" in the Final Rule "must disclose the transactions" if they occurred within the last three years. *Id.* §§ 1.6011-10(h)(2), 1.6011-11(h)(2). Material advisors must disclose transactions if they relate to any "tax statement with respect to a transaction described" in the Final Rule submitted to the IRS within the last six years. *Id.* §§ 1.6011-10(h)(3), 1.6011-11(h)(3).

"By statutory provision, all failures to supply required information on reportable transactions, including the micro-captive transactions specified in the [Final Rule], are punishable by civil monetary penalties—$50,000 for advisors and up to that amount (depending on the amount of tax gain realized) for taxpayers." *CIC Servs.*, 593 U.S. at 214 (citing 26 U.S.C. §§ 6707(b), 6707A(b)). "In addition, an advisor may incur a daily $10,000 penalty for failing to furnish, on request, a list of the people it advised on a reportable transaction." *Id.* (citing 26 U.S.C. §§ 6708(a), 6112(a)). And "any person who 'willfully' breaches an IRS reporting requirement is also subject to criminal penalties," including fines and up to a year in prison. *Id.* (quoting 26 U.S.C. § 7203).

The Final Rule thus imposes onerous disclosure requirements backed by the threat of large fines and imprisonment. Those requirements will expand the costs associated with preparing tax

returns and otherwise complying with IRS regulations when operating a captive insurance company. Ryan forms and manages captive insurance companies on behalf of its clients. First Am. Compl. ¶ 9. That means Ryan is a material advisor for many micro-captives, and Ryan and its clients have disclosure obligations under the Final Rule. Kotch Decl. ¶¶ 11-15. Because the Final Rule will impose unlawful and unnecessary costs on Ryan and discourage its current and potential clients from establishing and maintaining captive insurance companies, Ryan filed this suit.

## ARGUMENT

### I.    The IRS's threshold arguments fail.

#### A.    Ryan has standing because it is directly regulated by the Final Rule, which will directly harm it.

The IRS denies that Ryan has standing. Mot. 10-14. But Ryan is directly regulated by the Final Rule. There is thus "little question" that the Final Rule has caused Ryan "injury and that a judgment preventing . . . the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).

To establish standing, Ryan "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). "[T]here must be a causal connection between the injury and the conduct complained of." *Id.* And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

Where the "plaintiff is himself an object of the action . . . at issue," there is "ordinarily little question" the plaintiff has standing. *Id.* at 561-62; *see also Texas*, 933 F.3d at 446 ("Because it is the object of the Guidance and has suffered multiple injuries as a result, Texas has constitutional standing."); *Contender Farms, LLP v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015) ("An increased

regulatory burden typically satisfies the injury in fact requirement."); *Corbett v. TSA*, 19 F.4th 478, 483 (D.C. Cir. 2021) ("As a directly regulated party, [the plaintiff] plainly has standing.").

That is the case here. Ryan "establish[es] and manag[es] . . . captive insurance companies" for its clients. First Am. Compl. ¶ 9. That means "Ryan, LLC has provided 'material aid, assistance, or advice' in 'organizing, managing, . . . or carrying out' micro-captive transactions that the Final Rule defines as reportable transactions." Kotch Decl. ¶ 13 (quoting 26 C.F.R. § 301.6111-3(b)). Ryan is thus a "material advisor as defined by IRS regulations. *Id.* ¶ 12 (citing 26 C.F.R. § 301.6111-3(b)). And, as a material advisor, the Final Rule requires Ryan to "disclose certain micro-captive transactions that it assisted clients with over the past six years." *Id.* ¶ 15 (citing 26 U.S.C. § 6111; 26 C.F.R. §§ 1.6011-10(h)(3), 1.6011-11(h)(3)), 301.6111-3. The process of preparing these disclosures will be expensive and time consuming. *Id.* ¶¶ 19-22. And if Ryan does not submit those disclosures, it and its employees may be subject to civil penalties, criminal fines, and even jail time. *Id.* ¶¶ 16-18.

This is quintessential injury in fact. The Final Rule "imposes a regulatory burden on [Ryan] to comply with the [Final Rule] to avoid enforcement actions." *Texas*, 933 F.3d at 447. Because of the Final Rule, Ryan, must spend time and resources preparing disclosures that it would otherwise not have to submit. Kotch Decl. ¶¶ 19-24. Ryan "faces the threat of enforcement and ensuing penalties should [it] fail to comply." *Corbett*, 19 F.4th at 483; *see also Contender Farms*, 779 F.3d at 266 (explaining that the possibility of "penalties" and "prosecution" establish standing). The new IRS disclosure requirements will also "mean additional scrutiny from and disclosures to *state* regulators." Kotch Decl. ¶ 23. And because Ryan has shown an injury in fact, "[c]ausation and redressability then flow naturally." *Contender Farms*, 779 F.3d at 266. If this Court "find[s] that the [Final Rule] is invalid," Ryan will not suffer these injuries. *Id.* at 267.

The IRS admits that Ryan "may be" a material advisor but disputes standing on the ground that Ryan has not "alleged as much." *See* Mot. 15 n.15. But Ryan need only allege *facts*, not legal conclusions, and "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Here, Ryan alleged that it "establish[es] and manag[es] . . . captive insurance companies" for its clients. First Am. Compl. ¶ 9, which necessarily means it qualifies as a material advisor. That establishes standing. In any event, "[a] motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012). This Court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (citation omitted). Ryan has therefore submitted a declaration that confirms that Ryan is a material advisor.[3]

Ryan has standing for a second reason. The Final Rule "causes Ryan imminent financial injury because it discourages current clients and potential clients from establishing and maintaining captive insurance companies." First Am. Compl. ¶ 9; Kotch Decl. ¶¶ 29-33. The IRS dismisses this harm as speculative, but "[c]ommon sense and basic economics tell us that a business will be harmed by a government action when the government action" targets the good or service that the company offers. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017); Kotch Decl. ¶ 33. The Final Rule imposes new and onerous disclosure requirements on captive insurance companies that fall within its scope. And it represents a more than implicit threat that companies that

---

[3]    At minimum, if this Court doubts Ryan's standing as alleged in its amended complaint, it should grant Ryan leave to amend its complaint to undisputably establish standing. *See Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir. 1991) ("[L]eave to amend defective allegations of subject matter jurisdiction should be freely given.").

form small captive insurance companies face a heightened threat of audit and prosecution from the IRS. Kotch Decl. ¶¶ 27-31; *see also* 90 Fed. Reg. at 3,550 ("[T]he IRS will take or may take a position that taxpayers are not entitled to the purported tax benefits").

Under "basic law[s] of economics," companies will respond to that increased risk (and compliance burden) by forming fewer captive insurance companies. *Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 738 (5th Cir. 2016); *see also Osborn v. Visa Inc.*, 797 F.3d 1057, 1065 (D.C. Cir. 2015) ("[A]llegations of economic harm 'based on standard principles of supply and demand' are 'routinely credited by courts.'" (citation omitted)); Kotch Decl. ¶ 33. Indeed, the same thing occurred after the IRS issued Notice 2016-66, which imposed similar disclosure obligations on the micro-captive industry. Kotch Decl. ¶ 35. Ryan has therefore alleged it will suffer a direct and nonspeculative harm—lost revenue and profits because of lessened demand for its captive insurance creation and management services. Kotch Decl. ¶ 34. That is enough for standing. *See Three Expo Events, LLC v. City of Dallas, Texas*, 907 F.3d 333, 342 (5th Cir. 2018) ("loss of revenues" and "profits" constitute injury in fact).

**B.      Ryan falls within the zone of interests protected by the statute because it is regulated by the Final Rule.**

Likewise, because Ryan is the "subject of the contested regulatory action," it falls within the zone of interests protected by the APA. *Clarke*, 479 U.S. at 399; *Contra* Mot. 15-17.

"[T]he 'zone of interest' test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." *Clarke*, 479 U.S. at 399. The test "is not meant to be especially demanding." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (citation omitted). "In cases where the plaintiff is not itself the subject of the

contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke*, 479 U.S. at 399. The zone of interests test does not require any "indication of congressional purpose to benefit the would-be plaintiff." *Texas v. United States*, 787 F.3d 733, 754 (5th Cir. 2015) (citation omitted).

Ryan "easily satisf[ies] the zone-of-interests test." *Id*. First, it is the "subject of the contested regulatory action." *Clarke*, 479 U.S. at 399; *supra* pp. 7-10. In addition, Ryan falls within the zone of interests because there "is sound reason to infer that Congress 'intended [material advisors] to be relied upon to challenge [the IRS's] disregard of the law.'" *Clarke*, 479 U.S. at 403 (citation omitted). The zone of interests test looks at "the substantive provisions of the" statute that "serve as the gravamen of the complaint." *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (citation omitted). Here, the Final Rule conflicts with 26 U.S.C. § 831(b). In that provision, "Congress has shown a concern" to promote micro-captives, yet the IRS is unlawfully targeting micro-captives, in contravention of the express command of Congress. *Clarke*, 479 U.S. at 403. Ryan is a material advisor that assisted micro-captives in carrying out transactions that the Final Rule defines as reportable. Congress would therefore have anticipated that material advisors would challenge unlawful IRS regulations. Indeed, that is precisely what occurred in *CIC Servs.*, 593 U.S. at 214-15. The Court should reject the IRS's argument that Ryan falls outside the zone of interests protected by the Internal Revenue Code and the APA.

> ### C.    The Declaratory Judgment Act does not deprive this Court of jurisdiction over this suit brought under the Administrative Procedure Act.

The IRS next argues the Declaratory Judgment Act "divests the Court of jurisdiction over Ryan's case." Mot. 15. This argument fundamentally misunderstands Ryan's challenge, which it brought under the APA. And the Supreme Court rejected a nearly identical bid to avoid review of

Notice 2016-66 about five years ago. *See CIC Servs.*, 593 U.S. at 219-23. The IRS conspicuously fails to cite the Supreme Court's decision.

Ryan brought "this civil action under the Administrative Procedure Act." First Am. Compl., ¶ 1; *see* 5 U.S.C. § 702. "If section 702 of the APA creates a cause of action for [a] claim, jurisdiction exists under the general federal question statute," 28 U.S.C. § 1331, and "[t]he APA then serves as the waiver of sovereign immunity that allows a private party to sue the government." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 n.13 (5th Cir. 1998) (citing 5 U.S.C. § 702). APA claims may be brought using "any applicable form of legal action, including actions for declaratory judgments." 5 U.S.C. § 703.

Ryan has stated a claim under the APA, and the IRS does not argue otherwise. Section 702 establishes "two separate requirements." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). "First, the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion." *Id.* (citation omitted). "[T]he 'agency action' in question must be 'final agency action.'" *Id.* (quoting 5 U.S.C. § 704). "Second, the party seeking review under § 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action." *Id.* at 883 (citation omitted). A rule published in the Federal Register is quintessential final agency action. *See Texas*, 933 F.3d at 441 (notice-and-comment rulemaking is "by definition, a final agency action"). And Ryan has been adversely affected by the Final Rule. *See supra* pp. 7-11. This Court thus has jurisdiction to "hold unlawful and set aside" the Final Rule, 5 U.S.C. § 706(2).

Despite this, the IRS argues that this Court lacks jurisdiction because the Declaratory Judgment Act prohibits declarations "with respect to Federal taxes." Mot. 14-15 (quoting 28 U.S.C. § 2201). This argument fails twice over.

*First*, the Supreme Court rejected a materially identical argument in *CIC Servs.*, when it held that the federal court had jurisdiction to set aside IRS Notice 2016-66. 593 U.S. at 225. After Ryan and CIC Services challenged IRS Notice 2016-66, the IRS argued that the Anti-Injunction Act, which forbids federal courts from "restraining the assessment or collection of any tax," barred the suit. *Id*. at 214 (quoting 26 U.S.C. § 7421(a)). The Supreme Court rejected the IRS's argument. "A reporting requirement is not a tax; and a suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection." *Id*. at 216. And although there are civil tax penalties for violating the reporting requirements, that does not make the challenge "a tax action in disguise." *Id*. at 219-20. That's because the injunction against the Notice would "address[] something other than the [civil] tax penalty." *Id.* at 220. "[T]he Notice imposes affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty." *Id.* "[T]he Notice's reporting rule and the statutory tax penalty are several steps removed from each other." *Id.* And "violation of the Notice is punishable not only by a tax, but by separate criminal penalties." *Id.*

The same reasoning applies to the Final Rule. Courts have generally "held that the federal tax exception to the Declaratory Judgment Act and the Anti-Injunction Act have coterminous application." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974) (collecting cites); *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011) (en banc) (same); *Warren v. United States*, 874 F.2d 280, 282 (5th Cir. 1989) (interpreting the statutes together because "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act").

This Final Rule is Notice 2016-66 reborn. It makes the same kind of micro-captive transactions reportable transactions, imposes the same disclosure obligations, and backs up these new reporting requirements with civil penalties and criminal liability. Ryan thus does not seek a decla-

ration "with respect to Federal taxes." *Rivero*, 1 F.4th 340, 343, 343 (5th Cir. 2021). Ryan "challenges, in both its substantive allegations and its request for an injunction, a regulatory mandate—a reporting requirement—separate from any tax." *CIC Servs.*, 593 U.S. at 225. A declaration that the Final Rule is unlawful thus would not "declare the rights" of any party "with respect to Federal taxes." 28 U.S.C. § 2201. In fact, the IRS affirmatively admits that the Final Rule does not "determine the tax consequences" for operating a micro-captive. Mot. 1; *see also* Mot. 12 (arguing the Final Rule does not change the "taxability" of micro-captives)). Because Ryan seeks to set aside "a regulation that is not a tax," *CIC Servs.*, 593 U.S. at 225, the Declaratory Judgment Act poses no bar.

Even though the Supreme Court rejected this *same* argument under a statute with coterminous application in a case challenging nearly identical reporting requirements, the IRS has made it again. The IRS does not cite *CIC Services*, much less distinguish it. Instead, it cites *Rivero v. Fid. Invs., Inc.*, where the court held that a declaration which would "construe various tax code provisions and treasury regulations to value Medrano's gross estate" was "beyond the power granted to federal courts." 1 F.4th at 343, 346. That sort of declaration—one addressing the value of assets with direct implications for tax liability—is different in kind than what Ryan seeks. The Fifth Circuit has never implied, much less held, that an APA challenge to an IRS regulatory reporting requirement is foreclosed by the Declaratory Judgment Act. And the Supreme Court has rejected that precise argument in the Anti-Injunction Act context. *Rivero* is simply beside the point.

*Second*, the Declaratory Judgment Act does not grant, much less "divest[]," jurisdiction at all. *Contra* Mot. 15. "The Declaratory Judgment Act is remedial only. It 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71

14

(5th Cir. 1990) (citation omitted). In a "case with respect to Federal taxes," the court lacks "power to provide declaratory relief." *Rivero*, 1 F.4th at 343. But, again, this is not a case about federal tax liability. And the Declaratory Judgment Act says nothing about the court's power to grant *other* relief, like vacatur. *See* First Am. Compl. pp.14-15 (requesting vacatur in addition to a declaration). *CIC Services* confirms federal courts may vacate tax reporting regulations like the Final Rule under the APA. Therefore, this Court has jurisdiction over Ryan's request for vacatur under the APA, regardless of whether it issues a declaration under the Declaratory Judgment Act. At most, this Court would strike the request for relief under the Declaratory Judgment Act.

## II.    Ryan has properly stated APA claims.

The IRS also argues that Ryan's APA claims should be dismissed for failure to state a claim. To state a claim, "a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citation omitted). Ryan's claims easily meet that standard.

### A.    Ryan has properly stated an APA claim that the Final Rule exceeds the IRS's authority and is contrary to law.

The Final Rule exceeds the IRS's statutory authority. "[A]n agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Courts—not agencies—must "independently interpret the statute and effectuate the will of Congress" by "fix[ing] the boundaries of [the] delegated authority" for agencies and "ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (citation omitted). The Final Rule exceeds the "boundaries" of the IRS's "delegated authority" because it punishes companies that form captive insurance companies in compliance with the statute that Congress enacted.

15

The IRS's opposition to captive insurance companies began in 1977. The IRS issued Revenue Rule 77-316, which treated captive insurance companies as part of the same "economic family" as the parent businesses they insure and prohibited deduction of the premiums paid to the captive insurance company. "No court" accepted that theory. IRS Rev. Rule 2001-31. And, in 1986, the Congress enacted 26 U.S.C. § 831(b), which allows small captive insurance companies to pay tax only on their investment income, not on the premiums paid. Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2,085. Despite Congress's unambiguous determination that captive insurance companies are legitimate insurance companies, not illicit tax havens, the IRS did not withdraw Rev. Rule 77-316 until 2001. *See* Rev. Rule 2001-31.

In 2015, Congress expanded the tax benefits for micro-captive insurance companies again. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat 2,242, 3,106-08 (2015). Congress also clarified the diversification requirements micro-captives must meet, thus preventing potential abuses. *Id.* Yet the IRS responded with an increased focus on stamping out micro-captives. The *next year*, the IRS promulgated Notice 2016-66, which declared that most captive insurance transactions are "reportable," meaning the IRS *believes* they have "a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). But the IRS failed to *demonstrate* that "micro-captive insurance arrangements have the potential for tax avoidance or evasion." *CIC Servs.*, 592 F. Supp. 3d at 683-88. A federal court therefore vacated the Notice. *Id.*

The Final Rule continues the IRS's campaign against legitimate micro-captives. It once again proclaims that micro-captives that satisfy the requirements Congress established in Section 831(b) are presumptively abusive if they fail a test that Congress never authorized. In so doing, the Final Rule undermines Congress's manifest intention to promote micro-captives. First Am. Compl. ¶ 44-46. Agencies must "effectuate the will of Congress," not undermine it. *Loper Bright*,

603 U.S. at 395; *see also Summa Holdings, Inc. v. IRS*, 848 F.3d 779, 787 (6th Cir. 2017) (IRS lacks authority to "reject a Code-compliant transaction in the service of general concerns about tax avoidance").

The Final Rule's treatment of Section 831(b)'s "diversification" requirements is a prime example of the IRS exceeding its statutory limits. 90 Fed. Reg. at 3,554. In 2015, Congress amended Section 831(b)(2)(B) to clarify the "[d]iversification requirements" that micro-captive insurance companies must meet to qualify for tax preference. Either 1) "no more than 20 percent of the net written premiums" of the micro captive may be "attributable to any one policyholder" *or* 2) no person may own an interest in the captive insurance company that is "more than a de minimis percentage higher than the percentage of interests" that person owns of the company receiving insurance. 26 U.S.C. § 831(b)(2)(B)(i). Micro-captive insurance companies are typically owned by "small businesses" and thus have "comparatively few policyholders." First Am. Compl. ¶ 31. Most micro-captives will therefore qualify for tax preference under the second diversification requirement, which requires the owners of the micro-captive to own essentially the same percentage of the parent company being insured.

The Final Rule, however, declares that Section 831(b)'s "diversification requirements are not sufficient to eliminate the possibility that a transaction is or may be a tax avoidance transaction." 90 Fed. Reg. at 3,554. The Final Rule exempts micro-captives that satisfy Section 831(b)'s *first* diversification requirement from its scope. *See* 26 C.F.R. § 1.6011–10(b)(1)(iii). But it does not exclude micro-captives that meet the *second* diversification requirement. *See id.* The Final Rule thus punishes micro-captives that establish tax eligibility in a way that Congress expressly authorized in 2015. *See* Pub. L. No. 114-113, 129 Stat at 3,107.

17

The IRS's main response is that "Congress has authorized and tasked the Treasury with identifying transactions with the risk of avoidance," and it defends the Final Rule as exercising that authority. Mot. 18-19. But, to make something a "reportable transaction," the IRS must "determine[ it has] a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). Notice 2016-66 was struck down for failure to meet that standard. *CIC Servs.*, 592 F. Supp. 3d at 683-88. And the Final Rule does not cure those problems. *See infra* pp. 21-25.

The IRS also argues that "the Final Rule imposes no substantive restrictions on micro-captives nor does it alter the determination of the allowance or disallowance of a Section 831(b) election." Mot. 20. This is beside the point. The Final Rule imposes substantial reporting obligations on micro-captives and material advisors such as Ryan. And, more importantly, the Final Rule is further proof that the IRS views micro-captives as tax cheats that it intends to prosecute at every opportunity. The IRS's attempt to chill companies from using a tax strategy that Congress has repeatedly endorsed exceeds its authority. *See Summa Holdings, Inc.*, 848 F.3d at 787.

### B. Ryan has properly stated an APA claim that the Final Rule is arbitrary and capricious.

The IRS also seeks dismissal of Ryan's claim that the Final Rule is arbitrary and capricious. This argument should be familiar to the IRS, which "does not have a great history of complying with APA procedures" or following "the basic rules of administrative law." *CIC Servs.*, 592 F. Supp. 3d at 688 (citation omitted) (vacating Notice 2016-66 in part because it was arbitrary and capricious). But, to decide that claim, this Court must review the Administrative Record, which the IRS has not yet filed. The IRS's motion to dismiss these claims is therefore premature. And, in any event, the Final Rule is arbitrary and capricious on its face.

1.    **The IRS's arguments are premature because it has not yet filed the Administrative Record.**

The IRS argues that Ryan has not plausibly alleged that the Final Rule is arbitrary and capricious. Mot. 9, 20-24. But *summary judgment*, not Rule 12(b)(6), "serves as the mechanism for deciding" whether agency action "is supported by the administrative record and otherwise consistent with the APA standard of review." *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 741 F. Supp. 3d 568, 597 (N.D. Tex. 2024) (citation omitted).

In cases "arising under the APA, the agency's role is 'to resolve factual issues to arrive at a decision' supported by the administrative record." *Yogi Metals Grp. Inc. v. Garland*, 567 F. Supp. 3d 793, 797-98 (S.D. Tex. 2021) (citation omitted). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The APA requires the court to "review the whole record" in making that determination. 5 U.S.C. § 706. The Court may review "neither more nor less information than did the agency when it made its decision," lest the government "withhold evidence unfavorable to its case." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

Because "the focal point for judicial review should be the administrative record," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), summary judgment "serves as the mechanism for deciding" whether agency action "is supported by the administrative record and otherwise consistent with the APA standard of review." *Nat'l Ass'n for Gun Rts., Inc.*, 741 F. Supp. 3d at 597 (citation omitted); *see also Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996) (per curiam) (summary judgment is the "mechanism for review of agency decisions").

In other words, the Rule 12(b)(6) "plausibility standard has no place in APA review." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). "The relevant inquiry is—and must remain—not

whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." *Id.* The IRS does not address this mismatch. Indeed, it cites no cases that considered APA arbitrary-and-capricious claims at the motion to dismiss stage.

To the contrary, it is reversible error to resolve arbitrary and capricious claims before the Administrative Record is filed. *See Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792-93 (reversing because district court rendered judgment for government even though "nothing purporting to be the complete administrative record was submitted"). For that reason, courts often deny motions to dismiss APA claims because the Administrative Record has not yet been filed. In *Swedish Am. Hosp. v. Sebelius*, for instance, the government moved to dismiss before producing the Administrative Record. 691 F. Supp. 2d 80, 87-88 (D.D.C. 2010). The court denied the motion to dismiss and ordered the government to produce the Administrative Record. The plaintiff was challenging "whether the Secretary's adjudicatory process was reasonable and whether the decision was consistent with Congressional intent" and "[t]he court [wa]s unable to assess the merits of these arguments without considering the administrative record." *Id.* at 89; *see also Farrell v. Tillerson*, 315 F. Supp. 3d 47, 69 (D.D.C. 2018) (same); *Vargus v. McHugh*, 87 F. Supp. 3d 298, 302 (D.D.C. 2015) (same).

This Court should do the same. The IRS has not filed the Administrative Record and has declined to tell Ryan when it might. But Ryan's arbitrary-and-capricious claims challenge "whether the [IRS's rulemaking] process was reasonable and whether the decision" it reached "was consistent with Congressional intent." *Swedish Am. Hosp.*, 691 F. Supp. 2d at 89. The IRS contends that the IRS engaged in a "reasoned process that considered the comments, case law on micro-captives, and other factors" and thus "adequately explained" the IRS's conclusions. Mot.

21-22. But deciding *whether* the IRS "made a reasoned and objective decision regarding the Final Rule," Mot. 24, requires reference to the Administrative Record. *See Camp*, 411 U.S. at 142; *Swedish Am. Hosp.*, 691 F. Supp. 2d at 88. The IRS's bid for judgment on Ryan's arbitrary-and-capricious claims is therefore premature.

> **2.     In any event, Ryan has properly alleged that the Final Rule is arbitrary and capricious.**

Even assuming Ryan must plausibly allege that the Final Rule is arbitrary and capricious, *but see Atieh*, 727 F.3d at 76, it has met that burden. Agency action is arbitrary and capricious if the agency failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted); *see also CIC Servs.*, 592 F. Supp. 3d at 687. The IRS failed to do so multiple times over.

*First*, the IRS has once again failed to identify "relevant facts and data supporting th[e] conclusion" that "micro-captive insurance arrangements have the potential for tax avoidance or evasion." *CIC Servs.*, 592 F. Supp. 3d at 687. In the Final Rule, the IRS defends its treatment of "micro-captive transactions" by referencing its "[e]xaminations of taxpayers and promotors," "the IRS's long-standing positions with respect to abusive micro-captives as made public in annual Dirty Dozen tax schemes publications and case law," and "available industry data." 90 Fed. Reg. at 3,538. The IRS has not actually *produced* this information, much less demonstrated that it "examine[d] the relevant data and articulate[d] a satisfactory *explanation* for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (emphasis added) (citation omitted).

Notice 2016-66 was vacated for precisely this reason. *See CIC Servs.*, 592 F. Supp. 3d at 686-87. In that Notice, as in the Final Rule, the IRS relied on "IRS news releases . . . in which the

IRS identifie[d] micro-captive insurance arrangements a[s] potentially 'abusive tax structure[s]," referenced the "taxpayers under audit and . . . in litigation for using this arrangement," and cited several tax court cases "regarding insurance and captive insurance." *Id.* at 685-86 (citation omitted). But neither Notice 2016-66 nor the Administrative Record "include[d] any underlying facts or data explaining how [the IRS] became aware of 'a large number of these transactions' or facts regarding taxpayers under audit and in litigation that explain how this transaction has the potential for tax avoidance or evasion." *Id.* at 686. The IRS news releases in question simply declared "micro captive insurance arrangements a potentially 'abusive tax structure," but did not "include any underlying facts or data supporting the IRS's determination." *Id.* (citation omitted). And "[s]imply including cases in the administrative record that suggest certain tax structures could be abusively employed is not synonymous with examining relevant facts and data in connection with issuing the Notice." *Id.* at 687. Yet the Final Rule relies on the same evidence-free justifications.

The IRS cannot declare micro-captive transactions abusive by fiat. It must show its work. Notice 2016-66 was arbitrary and capricious because the IRS asked the court to simply take its word that "micro-captive insurance arrangements have the potential for tax avoidance or evasion." *Id.* Yet the IRS has done the same thing again. Worse, this time the IRS asks for dismissal before the Administrative Record is filed.

*Second*, the specific "factors" the Final Rule uses to "identify the Micro-captive Listed Transaction[s] and the Micro-captive Transaction[s] of Interest" confirm that it is arbitrary and capricious. 90 Fed. Reg. at 3,538.

Take the Final Rule's focus on "loss ratios." *Id.* at 3,540. The Final Rule relies heavily on loss ratios—the percentage of premiums that a captive insurance company spends each year to pay claims and administrative expenses—to identify allegedly abusive micro-captive arrangements. A

22

micro-captive transaction is a "listed transaction" if the micro captive has provided financing to an owner and operates with a loss ratio of less than 30%. 26 C.F.R. § 1.6011-10(c)(1)-(2). A transaction is a "transaction of interest" if the micro-captive operates with a loss ratio of less than 60%. 26 C.F.R. § 1.6011-11(c)(2).

The Final Rule's purported justifications for these thresholds are arbitrary and capricious. The IRS asserts that loss ratios help identify "excessive pricing of premiums and artificially low or nonexistent claims activity." 90 Fed. Reg. at 3,540. But it also recognizes that "low loss ratios may be the result of coverage of low-frequency, high-severity risks." *Id.* at 3,541. Exactly. That is why loss ratios are an arbitrary metric for determining whether a micro-captive is legitimate. In *R.V.I. Guaranty. Co. & Subsidiaries*, the IRS argued that an insurance company was a sham because of its low loss ratios. 145 T.C. at 216. Over a thirteen-year period, the company's average loss ratio was around 30%. But the loss ratio in any given year varied wildly. Between 2000 and 2003, for instance, the company's loss ratios were all near 1%. *Id.* In other years, the company's loss ratios were very high—64.2% in 2004 and 97.9% in 2008. *Id.* The tax court found that this was legitimate insurance activity—"[a]s one would expect with catastrophic-type coverage, [the] loss ratio in some years was extremely low." *Id.* at 227. But "this does not mean that the insurer is failing to provide 'insurance.'" *Id.*

The same is true of micro-captives. "By structure and design, micro-captives have lower loss ratios than traditional insurance companies." First Am. Compl. ¶ 31. That is because traditional insurance companies tend to "insure high-frequency," predictable risks, so commercial insurance companies can accurately price premiums to account for anticipated claims activity. But companies also face risks from black swan events, like terrorism or pandemics. First Am. Compl.

¶ 30. Micro-captives allow companies to insure those risks. But because the losses are, by defini-tion, infrequent, a micro-captive "may go many years without paying [a] claim," before "major losses" eventually occur. *R.V.I. Guar. Co. & Subsidiaries*, 145 T.C. at 227. During that time, their loss ratios will be very low. The Final Rule assumes those low loss ratios reflect a lack of legitimate insurance. But assuming that "[t]he absence of losses" under a policy means the insurer has not taken on "meaningful risk of loss" is a "methodological error." *Id.*

The Final Rule does not address this error. Instead, it argues that *R.V.I.* somehow *supports* the loss ratios because "the average ten-year loss ratio in the *R.V.I.* case was 32 percent." 90 Fed. Reg. at 3,541. That reasoning does not explain why using loss ratios to identify abusive transac-tions for micro-captives is reasonable in the first place. Even if it is, the IRS does not explain why loss ratios below 30 percent cannot be legitimate—*R.V.I.* demonstrates that legitimate insurance companies may run loss ratios of around 1% for years on end. And none of this supports the 60% loss ratio for transactions of interest, which is nearly double the average loss ratio in *R.V.I.* This failure to draw a "rational connection between the facts found and the choice made" is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (citation omitted).

The IRS defends the 60% loss ratio for transactions of interest by relying on "data from the National Association of Insurance Commissioners." 90 Fed. Reg. at 3,542. Once again, this Court cannot review that data because the Administrative Record has not been filed. But the IRS's reli-ance on that data is arbitrary and capricious on its face. The report in question tracks loss ratios for noncaptive, commercial insurers. Comparing the loss ratios "of commercial insurance companies" to the loss ratios of micro-captives is "not instructive." *See Rent-A-Ctr., Inc. v. Comm'r*, 142 T.C. 1, 12 (2014) (rejecting comparison of commercial and micro-captive premium to surplus ratios because commercial insurers "face competition and, as a result, typically price their premiums to

have significant underwriting losses"). For the same reason, commercial insurance companies have higher loss ratios than micro-captives because commercial insurers cover more predictable risks and collect proportionally less in premiums. *See id.* Given this fundamental mismatch, the IRS's reliance on this data set of commercial insurers was unreasonable. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 427 (2021) (inferences drawn from the data must be "reasonable.").

Finally, the Final Rule's "Financing Factor" is arbitrary and capricious, too. *See* 26 C.F.R. § 1.6011-11(c)(1). The IRS has authority to designate something a "reportable transaction" only if it determines the transaction has "a potential for tax avoidance." 26 U.S.C. § 6707A(c)(1). And the Final Rule provides that related-party financing, by itself, is enough to make a transaction a "transaction of interest." 26 C.F.R. § 1.6011-11(c)(1). But the IRS admits in the Final Rule that "the presence of related-party financing in a micro-captive transaction by itself may not rise to the level of tax avoidance." 90 Fed. Reg. at 3,546; *see also Rent-A-Ctr.*, 142 T.C. at 11 (captive insurer that invested substantially all of its funds in the treasury stock of its parent corporation was not a "sham"). In fact, it admits that these "financing arrangements" should "not be considered tax avoidance unless coupled with . . . circumstances inconsistent with insurance for Federal tax purposes." 90 Fed. Reg. at 3,546. The IRS's reliance on related-party financing as a sufficient basis for defining a "transaction of interest" is therefore arbitrary and capricious.

## CONCLUSION

The Court should deny the IRS's motion to dismiss.

Dated: May 19, 2025                                  Respectfully submitted,

*/s/ Scott A. Keller*

Steven P. Lehotsky (admitted *pro hac vice*)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW Suite 700
Washington, DC 20001
steve@lkcfirm.com
T: (512) 693-8350
F: (512) 727-4755

Tyler H. Lipp (Texas Bar # 24070151)
RYAN, LLC
13155 Noel Road, Suite 100
Dallas, TX 75240
tyler.lipp@ryan.com
T: (469) 399-4619
F: (972) 960-0613

Scott A. Keller (Texas Bar # 24062822)
LEHOTSKY KELLER COHN LLP
408 West 11th Street, 5th Floor
Austin, TX 78701
scott@lkcfirm.com
T: (512) 693-8350
F: (512) 727-4755

Drew F. Waldbeser (admitted *pro hac vice*)
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
drew@lkcfirm.com
T: (512) 693-8350
F: (512) 727-4755

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, the foregoing document was electronically filed with the Clerk of the U.S. District Court for the Northern District of Texas using the electronic case filing system of the Court, which will transmit a notice of electronic filing to all counsel of record.

*/s/ Scott A. Keller*
Scott A. Keller

26